[Civ. No. 33488. First Dist., Div. Four. June 19, 1974.]

In re R. C., A Person Coming Under the Juvenile Court Law.
JOSEPH J. BOTKA, as Chief Probation Officer, etc.,
Plaintiff and Respondent, v.
R. C., Defendant and Appellant.

## COUNSEL

Jonathan Newman, under appointment by the Court of Appeal, and David J. Cooper for Defendant and Appellant.

Evelle J. Younger, Attorney General, Edward A. Hinz, Jr., Chief Assistant Attorney General, William E. James, Assistant Attorney General, John T. Murphy and Ann K. Jensen, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**CHRISTIAN, J.**—R. C. appeals from an order of the juvenile court committing him to the Youth Authority after it had been determined that he had set fire to two structures; appellant was found to be a minor within the provisions of Welfare and Institutions Code section 602.

The evidence is not in conflict. At about 3:40 a.m., February 26, 1973, two police officers patrolling the area of O'Farrell and Fillmore Streets, in San Francisco, observed a young man standing in the partly opened doorway of a building and looking inside. The young man turned and walked across the street where he joined another boy. The officers stopped them, asked for their names, dates of birth and addresses, and asked what they were doing. After the boys had identified themselves as R. C. and J. J., the officers placed them in the back of the police vehicle and explained that they were being detained while the officers checked further into what they had been doing. Appellant had been identified to one of the officers earlier that evening as a possible suspect in a series of fires that had been set in the Fillmore area.

Inspecting the doorway where J. J. had first been seen, the officers observed fresh scratches and impressions indicating that the door had been forced open. The officers then checked the lot across the street, where they had seen appellant making a tossing motion; a knife was found. The officers then took the boys into custody.

On arrival at the Hall of Justice, the two boys were placed in separate rooms for questioning concerning a fire in which two deaths had occurred. J. J. convincingly denied knowledge of that fire, but admitted that he, D. B. and appellant were members of "the Flames" and were responsible for 14 or 15 other fires in the Western Addition area. As a result of this conversation, the officers concluded that the boys were not responsible for the arson-homicide which had been the primary focus of investigation. Appellant refused to talk.

It was stipulated at the hearing on the petition against appellant that fires set at 935 Webster Street and 1437-39 Golden Gate Avenue were incendiary in origin. It was also stipulated that if minors D. B. and J. J. were called to the stand, both would testify that they, along with appellant, had set fire to vacant buildings at 1437-39 Golden Gate Avenue and 935 Webster Street, with the intent to burn the buildings. Appellant did not testify.

Counsel for appellant moved to strike the petition on the ground that Penal Code section 1111 required corroboration of the stipulated testimony of D. B. and J. J., who were accomplices in the offense charged against appellant. The motion was denied.

Appellant points out that he was found to have violated a state law and was thereby brought within the jurisdiction of the juvenile court

(Welf. & Inst. Code, § 602),[1] solely on the testimony of two accomplices. Penal Code section 1111 provides that a "*conviction* cannot be had upon the testimony of an accomplice unless it be corroborated by such other evidence as shall tend to connect the defendant with the commission of the offense; . . ." (Italics added.) According to the strict language of the statute, there was corroboration in that the two accomplices supported each other. But it has been held that the testimony of one accomplice cannot corroborate that of another. (*People* v. *Creegan and Becker* (1898) 121 Cal. 554 [53 P. 1082]; *People* v. *Scofield* (1971) 17 Cal.App.3d 1018, 1026 [95 Cal.Rptr. 405].)

Appellant first contends that Penal Code section 1111 should by its own terms be construed as applying to a juvenile proceeding. Proof that a juvenile has violated a state law must be "supported by evidence, legally admissible in the trial of criminal cases, . . ." (Welf. & Inst. Code, § 701.) Historically, accomplice testimony was inadmissible, but the rule of exclusion was replaced in the British courts as early as the 18th Century (7 Wigmore on Evidence (3d ed. 1940) § 2056). Courts in this state have also repeatedly held that Penal Code section 1111, requiring corroboration, does not go to the admissibility of evidence, but to the effect to be given that testimony. (See *People* v. *Bowley* (1963) 59 Cal.2d 855, 858 [31 Cal.Rptr. 471, 382 P.2d 591, 96 A.L.R.2d 1178]; *People* v. *Santos* (1933) 134 Cal.App. 736, 746 [26 P.2d 522].)

Penal Code section 1111 by its own terms applies only to criminal *convictions,* while Welfare and Institutions Code section 503 provides that an "order adjudging a minor to be a ward of the juvenile court shall *not be deemed a conviction of a crime for any purpose,* nor shall a proceeding in the juvenile court be deemed a criminal proceeding." (Italics added.) To apply Penal Code section 1111 to a juvenile proceeding would thus be contrary to the intention expressed in the statute.

It is argued, however, that the determination of wardship on the basis of uncorroborated accomplice testimony was a deprivation of due process. It is true that proceedings to determine whether a minor is a delinquent must comport with the essentials of due process and fair treatment. (*In re Gault* (1967) 387 U.S. 1, 30-31 [18 L.Ed.2d 527, 547-548, 87 S.Ct. 1428]; *Kent* v. *United States* (1966) 383 U.S. 541, 553 [16 L.Ed.2d 84, 92-93, 86 S.Ct. 1045].) Where a juvenile is charged with an act which would constitute a crime if committed by an adult, "proof beyond a rea-

---

[1]The relevant portion of Welfare and Institutions Code section 602 is: "Any person who is under the age of 18 years when he violates any law of this state . . . is within the jurisdiction of the juvenile court, which may adjudge such person to be a ward of the court."

sonable doubt" at the adjudicatory stage is one of these essentials. (*In re Winship* (1970) 397 U.S. 358, 368 [25 L.Ed.2d 368, 377-378, 90 S.Ct. 1068]; *Richard M.* v. *Superior Court* (1971) 4 Cal.3d 370, 378 [93 Cal. Rptr. 752, 482 P.2d 664]; see also Welf. & Inst. Code, § 701.)

Appellant bases his due process contention on a New York decision which reversed an adjudication of delinquency where the sole evidence connecting the juvenile to acts of arson and burglary consisted of testimony by the accomplice to those acts. (*In re M.* (1970) 34 App.Div.2d 761 [310 N.Y.S.2d 399].) The New York court reversed on the basis of *In re Winship, supra,* 397 U.S. 358, reasoning that proof beyond a reasonable doubt requires corroboration of accomplice testimony. (*In re M., supra,* 310 N.Y.S.2d at pp. 400-401.) However, that application of *Winship* appears to be questionable. As the concurring opinion in *In re M.* noted: "In the instant case the rule in question limiting the effect of accomplice testimony is obviously not an essential of due process as is shown by the fact that it is not the rule in the United States courts and in the vast majority of states [citations]." (*In re M., supra,* 310 N.Y.S.2d at pp. 401-402.)[2] The federal courts do not require corroboration of accomplice testimony in federal prosecutions. (See *United States* v. *Honore* (9th Cir. 1971) 450 F.2d 31, 34, cert. den., 404 U.S. 1048 [30 L.Ed.2d 740, 92 S.Ct. 728]; *Quiles* v. *United States* (9th Cir. 1965) 344 F.2d 490, 494, cert. den., 382 U.S. 992 [15 L.Ed.2d 479, 86 S.Ct. 571].) Instead, federal juries are instructed that accomplice testimony is to be received with caution and weighed with great care. (See *Lyda* v. *United States* (9th Cir. 1963) 321 F.2d 788, 794-795.) ▆ The California requirement that accomplice testimony be corroborated is a legislative refinement; it is not a rule included within the traditional concepts of due process. (See *Lisenba* v. *California* (1941) 314 U.S. 219, 226-227 [86 L.Ed. 166, 174-175, 62 S.Ct. 280].) ▆ If corroboration of accomplice testimony is not an essential of due process in criminal cases, it similarly is not required in juvenile cases.

An alternative ground for the New York holding in *In re M.,* and a contention advanced by appellant in this case, is that application of Penal Code section 1111 in juvenile court proceedings is required by the equal protection clause of the Fourteenth Amendment to the United States Constitution. The claim is that all the rules of evidence and standards of proof applied in criminal cases must be extended to juvenile proceedings because

---

[2]Nevertheless, the rule of *In re M.* has been followed in subsequent New York cases. (See *In re L.* (1973) 41 App.Div.2d 674 [340 N.Y.S.2d 1001] [corroboration of accomplice required]; *R.* v. *Ploskitt* (1970) 34 App.Div.2d 402 [312 N.Y.S.2d 447] [corroboration of complainant required in rape case].)

in either type of proceeding the accused or the juvenile faces the possibility of a substantial loss of freedom.

Both the United States Constitution[3] and the Constitution of California[4] require similar treatment of persons similarly situated, allowing discrimination between one class and another only on the basis of distinctions reasonably related to the proper purposes of the law. ■ A classification which results in differences of treatment " 'must not be arbitrary, but must be based upon some differences in classes having a substantial relation to a legitimate object to be accomplished.' " (*In re S. A.* (1970) 6 Cal.App. 3d 241, 246 [85 Cal.Rptr. 775]; see also 3 Witkin, Summary of Cal. Law (7th ed. 1960) § 129, p. 1934.)

■ It is established that the differing needs and characteristics of adult offenders and juveniles justify the maintenance of a separate and different system of justice for each of the two classes. (*T. N. G.* v. *Superior Court* (1971) 4 Cal.3d 767, 783-784 [94 Cal.Rptr. 813, 484 P.2d 981]; *In re S. A., supra,* 6 Cal.App.3d 241, 245-246; cf. *McKeiver* v. *Pennsylvania* (1971) 403 U.S. 528, 545-551 [29 L.Ed.2d 647, 660-664, 91 S.Ct. 1976].) It remains to be determined whether differences between the adult criminal justice system and the juvenile system reasonably justify withholding application of the accomplice rule in juvenile proceedings. Differences between the two systems will be examined, and decisions which have upheld or rejected different treatment of adults and juveniles will be analyzed to provide a context for our decision.

A difference often advanced to justify disparate treatment of juveniles and adults is that juvenile cases are "civil" while adult cases are "criminal." But those simple labels do not suffice; deeper analysis of the characteristics and purposes of the two systems is required. (See *McKeiver* v. *Pennsylvania, supra,* 403 U.S. 528, 544 [29 L.Ed.2d 647, 660].)

Some of the reasoning which has been used to support different treatment of juveniles will not withstand such analysis. Thus, the purpose of Penal Code section 1111 does not, of itself, support limitation of the accomplice rule to adult cases. ■ The requirement that accomplice testimony be corroborated is designed to guard against testimony from tainted sources which has been given in the hope of leniency or immunity. (*People*

---

[3]"No state shall . . . deny to any person within its jurisdiction the equal protection of the laws." (U.S. Const., 14th Amend., § 1.)

[4]"All laws of a general nature shall have a uniform operation." (Cal. Const., art I, § 11.)

"[No] citizen, or class of citizens [shall] be granted privileges or immunities which, upon the same terms, shall not be granted to all citizens." (*Id.,* art. I, § 21.)

v. *Wallin* (1948) 32 Cal.2d 803, 808 [197 P.2d 734].) There is no in-dication that accomplice testimony is more trustworthy, or less likely to be given in hope of leniency, simply because the person charged with an offense is a juvenile. Similarly, respondent's contention is not conclusive, that to apply Penal Code section 1111 to juvenile proceedings which do not involve juries "is to say that a judge may not fairly consider the weight and value to be given the testimony of an accomplice in light of all of the surrounding facts and circumstances of the case." ██ The statute applies to adult criminal cases tried before a judge as well as to those tried before a jury. Thus, the absence of a jury in a juvenile case is not a full answer to appellant's equal protection claim.

Respondent suggests that withholding application of the accomplice rule of Penal Code section 1111 to juvenile court proceedings is justified by the fact that unavailability of corroborative testimony would in some cases block judicial intervention which might serve the welfare of the juve-nile by providing rehabilitation. The United States Supreme Court rejected a similar contention in deciding that due process requires adjudication of delinquency to be supported by proof beyond a reasonable doubt, saying: "It is true, of course, that the juvenile may be engaging in a general course of conduct inimical to his welfare that calls for judicial intervention. But that intervention cannot take the form of subjecting the child to the stigma of a finding that he violated a criminal law and to the possibility of insti-tutional confinement on proof insufficient to convict him were he an adult." (*In re Winship, supra,* 397 U.S. at p. 367 [25 L.Ed.2d at p. 377].) Yet *Winship's* conclusions as to due process do not foreclose the question whether the rule of Penal Code section 1111, which is not required by due process, may be withheld in juvenile cases.

██ The different purposes of the juvenile system may nevertheless justify reasonable differences in procedure so long as due process standards are met. In an equal protection analysis it is not insignificant that juries are never used in the juvenile court. It is not unreasonable to suppose that a judge conducting a juvenile hearing is less likely than a jury would be, to accept accomplice testimony uncritically. It is also significant that the consequences of a criminal conviction may be more severe than the con-sequences of an adjudication of delinquency. Although in a particular case the peculiarities of the juvenile commitment process may cause a juvenile offender to be confined longer than one prosecuted as an adult for the same conduct, the juvenile system does not employ any commitments paralleling the severe maximum sentences provided for adults convicted of major crimes. Although Penal Code section 1111 protects not only adults charged with major offenses but also adults charged with minor offenses

carrying light punishments, it is not unreasonable to give some weight to the relative severity of possible consequences in comparing the adult and juvenile systems.

Several specific safeguards of the adult criminal system are held not to have been mandated for juvenile offenders by the requirements of equal protection. ■ The right to bail has not extended to juvenile cases. (See *In re William M.* (1970) 3 Cal.3d 16, 26, fn. 17 [89 Cal.Rptr. 33, 473 P.2d 737]; *In re Magnuson* (1952) 110 Cal.App.2d 73, 74 [242 P.2d 362] [no right to bail on appeal].) ■ Similarly, the protections afforded by preliminary hearings or grand juries are not required in juvenile cases. (See *In re T. R. S.* (1969) 1 Cal.App.3d 178, 181 [81 Cal.Rptr. 574].)

■ The unavailability of the adult court procedure for dismissal of a charge after successful completion of probation (Pen. Code, § 1203.4) does not deny equal protection to juveniles. (*In re S. A., supra,* 6 Cal.App. 3d 241, 245.) ■ Neither does the five-year waiting period before juvenile records may be sealed. (*T. N. G.* v. *Superior Court, supra,* 4 Cal.3d 767.) ■ Although due process includes the right to trial by jury in state criminal proceedings (*Duncan* v. *Louisiana* (1968) 391 U.S. 145 [20 L.Ed.2d 491, 88 S.Ct. 1444]), equal protection does not require that the juvenile courts use juries. (See *McKeiver* v. *Pennsylvania, supra,* 403 U.S. 528.) The absence of a jury is a difference far more important than the inapplicability of Penal Code section 1111. Yet it was held to be permissible because if jury trial were required as a matter of constitutional right, the juvenile proceeding would be remade into a full adversary process. "If the jury trial were to be injected into the juvenile court system as a matter of right, it would bring with it into that system the traditional delay, the formality, and the clamor of the adversary system and, possibly, the public trial." (*Id.* at p. 550 [29 L.Ed.2d at p. 663].) Similarly, the rule that accomplice testimony must be corroborated, if applied to juvenile proceedings, would tend toward formality and an adversary atmosphere in the juvenile system.

We recognize that many protections of the criminal system have been extended to juveniles charged with violating the law. Thus the statutes provide that in a proceeding under Welfare and Institutions Code section 602, a minor must be advised of his constitutional rights (Welf. & Inst. Code, § 627.5); he is protected by a double jeopardy provision (Welf. & Inst. Code, § 606); and he has a right to counsel (Welf. & Inst. Code, §§ 633, 634, 679), a right to notice of the charges against him (Welf. & Inst. Code, § 633), a right to confront and cross-examine witnesses (Welf. &

Inst. Code, §§ 630, 702.5), a privilege against self-incrimination (Welf. & Inst. Code, §§ 630, 702.5), a right to appeal, and a right to a free transcript on appeal if he cannot afford counsel (Welf. & Inst. Code, § 800).

Similarly, other protections have been extended as a matter of due process. ■■ The exclusionary rules relating to illegally seized evidence apply (*In re Robert T.* (1970) 8 Cal.App.3d 990 [88 Cal.Rptr. 37]), as do the rules for unconstitutional pretrial identification. (*In re Carl T.* (1969) 1 Cal.App.3d 344, 351 [81 Cal.Rptr. 655].) ■■ An explicit waiver of rights prior to a judicial admission as in *Boykin* v. *Alabama* (1969) 395 U.S. 238 [23 L.Ed.2d 274, 89 S.Ct. 1709], is required in juvenile proceedings (*In re Michael M.* (1970) 11 Cal.App.3d 741 [96 Cal.Rptr. 887]), and statements obtained from juveniles in violation of *Miranda* are inadmissible. (*In re Roderick P.* (1972) 7 Cal.3d 801, 811 [103 Cal.Rptr. 425, 500 P.2d 1].) ■ The bar on multiple prosecutions (Pen. Code, § 654) applies to juvenile delinquency proceedings. (*In re Benny G.* (1972) 24 Cal.App.3d 371, 373 [101 Cal.Rptr. 28].) Violation of a criminal statute must be proved beyond a reasonable doubt before a court can exercise jurisdiction over a juvenile pursuant to Welfare and Institutions Code section 602. (Welf. & Inst. Code, § 701; see also *In re Winship, supra,* 397 U.S. 358.) ■ An appeal on the insufficiency of the evidence is subject to the same standards which govern review of criminal convictions generally. (*In re Roderick P., supra,* 7 Cal.3d 801, 809.)

But these protections have not been based on concepts of equal protection; they have either been created by statute or recognized as being required by due process. ■ The purposes and structure of the juvenile system are different from the adult criminal justice system. Hence when due process has been satisfied reasonable differences in procedure are not unconstitutional.

The order is affirmed.

Caldecott, P. J., concurred.

**RATTIGAN, J.**—I dissent.

Appellant has been subjected to wardship of the juvenile court upon its factual determination, reached on the basis of uncorroborated accomplice testimony only, that he had "violate[d] . . . [a] . . . law of this state" (Welf. & Inst. Code, § 602) in that he had committed the crime of arson proscribed by Penal Code section 447a.

I agree with the majority that the adjudication did not operate to deprive appellant of due process of law, as guaranteed him under the Fourteenth Amendment, by reason of its having been based upon such testimony alone. (See *Lisenba* v. *California* (1941) 314 U.S. 219, 226-227 [86 L.Ed. 166, 174-175, 62 S.Ct. 280]; *In re M.* (1970) 34 App.Div.2d 761 [310 N.Y.S.2d 399, 401-402] [concurring opinion].) I do not agree with the full import of the majority's statements (1) that "[t]he different purposes of the juvenile system may . . . justify reasonable differences in procedure so long as due process standards are met," or (2) that "[t]he purposes and structure of the juvenile system are different from the adult criminal justice system. Hence when due process has been satisfied reasonable differences in procedures are not unconstitutional." In my view, the justification of such "differences," upon the sole basis that "due process standards are met" or that "due process has been satisfied," ignores the affected juvenile's constitutional right to equal protection of the laws, as distinguished from his right to due process but as also guaranteed him by the Fourteenth Amendment. (See, e.g., *Douglas* v. *California* (1963) 372 U.S. 353, 356-358 [9 L.Ed.2d 811, 814-815, 83 S.Ct. 814].)

Appellant has invoked his right to equal protection on the ground that the uncorroborated accomplice testimony, upon which the adjudication of his wardship is based, would have been insufficient to support the *conviction* of an *adult* of the same crime (arson, in violation of Pen. Code, § 447a) by reason of the provisions of Penal Code section 1111.[1]

The decisions cited by the majority, in which comparable equal protection claims by juveniles have been denied, rest upon one or both of the alternative premises that the disparity of treatment accorded to juveniles is justified (1) because a contrary holding would subvert the essential difference between juvenile and adult prosecutions by equating them as adversary proceedings (see, e.g., *McKeiver* v. *Pennsylvania* (1971) 403 U.S. 528, 550-551 [29 L.Ed.2d 647, 663-664, 91 S.Ct. 1976] [trial by jury]); or (2) because the specific, disparate treatment in question otherwise operated to serve the best interests of the affected juvenile or of the system of juvenile justice generally. (See, e.g., *T. N. G.* v. *Superior Court*

---

[1] "1111. A conviction cannot be had upon the testimony of an accomplice unless it be corroborated by such other evidence as shall tend to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof. An accomplice is hereby defined as one who is liable to prosecution for the identical offense charged against the defendant on trial in the cause in which the testimony of the accomplice is given."

(1971) 4 Cal.3d 767, 783 [94 Cal.Rptr. 813, 484 P.2d 981]; *In re S. A.* (1970) 6 Cal.App.3d 241, 246 [85 Cal.Rptr. 775].)[2]

I am not persuaded that corroboration of accomplice testimony, if exacted in a juvenile proceeding pursuant to Penal Code section 1111, would escalate such proceeding to the adversary dimensions which attend the prosecution of an adult (compare *McKeiver* v. *Pennsylvania, supra,* 403 U.S. 528 at pp. 550-551 [29 L.Ed.2d 647 at pp. 663-664]), nor that withholding the statute's benefits in such proceeding has the effect of serving the interests of the affected juvenile or of the system of juvenile justice generally. (Compare *T. N. G.* v. *Superior Court, supra,* 4 Cal.3d 767 at p. 783; *In re S. A., supra,* 6 Cal.App.3d 241 at p. 246.)

I am unable to find any other rational basis for the differentiated treatment which was accorded appellant in terms of Penal Code section 1111. It therefore appears to me that he falls squarely within the meaning of the United States Supreme Court's declaration (quoted by the majority) that judicial intervention in a juvenile's conduct "cannot take the form of subjecting the child to the stigma of a finding that he violated a criminal law and to the possibility of institutional confinement *on proof insufficient to convict him were he an adult.*" (*In re Winship* (1970) 397 U.S. 358, 367 [25 L.Ed.2d 368, 377, 90 S.Ct. 1068] [italics added].)

I conclude that the adjudication of appellant's wardship, upon the basis of uncorroborated accomplice testimony which would have been insufficient to convict an adult of the crime with which he (appellant) was essentially charged, operated to deny him equal protection of the laws under the Fourteenth Amendment. I would therefore reverse the juvenile court's order accordingly.

A petition for a rehearing was denied July 11, 1974. Rattigan, J., was of the opinion that the petition should be granted. Appellant's petition for a hearing by the Supreme Court was denied August 28, 1974.

---

[2]The first decision here cited dealt with equal protection and due process alike (*T. N. G.* v. *Superior Court, supra,* at pp. 782-785); the second, with due process only. (*In re S. A., supra,* at pp. 246-247.)