UNITED STATES of America, Plaintiff,

v.

George TURLEY, Defendant.

Civ. A. No. 93–20051–01.

United States District Court,
D. Kansas.

Aug. 12, 1993.

Leon J. Patton, Asst. U.S. Atty., for plaintiff.

Alfred J. Kolom, Overland Park, KS, for defendant.

## MEMORANDUM AND ORDER

VAN BEBBER, District Judge.

This case is before the court on two motions to suppress evidence (Docs. 120 and 121) filed by Defendant George Turley. Defendant moves the court to suppress all items seized from his home during a search conducted pursuant to a search warrant on October 16, 1991, and all fruits of the search. Defendant also moves the court to suppress evidence of statements made by defendant during plea negotiations which occurred December 29, 30, and 31, 1991. The court held an evidentiary hearing on the motions on July 26, 1993. Having considered the evidence adduced at the hearing, the parties' legal memoranda, and the arguments of counsel, the court is prepared to rule. For the reasons stated more fully below, defendant's motions to suppress are denied.

## I. MOTION TO SUPPRESS EVIDENCE FROM OCTOBER 16, 1991 SEARCH

### A. Background

During the hearing on this motion, the court heard testimony from Special Agent Mark Reed of the Internal Revenue Service. Reed served as a team leader during the execution of the search warrant. Reed's testimony was the only evidence presented during the hearing. The court therefore finds the version of events presented by Reed to be generally credible. Based upon the credible evidence adduced at the hearing, and as required by Fed.R.Crim.P. 12(e), the court makes the following findings of fact:

1. At approximately 6:10 a.m. on October 16, 1991, a search of defendant Turley's residence at 1616 Lakestone Drive was commenced. Between five and seven agents were involved in the search. Defendant Turley was arrested pursuant to an arrest warrant. The residence was secured and a videotape of the residence before the search was made. The situation was explained to defendant Turley's wife and she was given a copy of the search warrant.

2. Rooms within the large residence were labeled with numbers and agents were assigned certain rooms. Reed testified that he had held a briefing the night before the search took place and referred to the search warrant numerous times during the search of the residence. Reed made the decision whether or not to seize an item. Some items, including photographs, were rejected for seizure. Valuable items expressly listed in the warrant were seized. Other items not listed in the warrant, including several television sets, were not seized. Receipts were also seized as being within the scope of the warrant.

3. Reed testified that a silver place setting located in the kitchen was seized because it seemed related to jewelry and therefore within the scope of the warrant. Some ceiling fans and doorknobs located in a storage room were seized because the items had been reported as stolen. As the search proceeded, a computer inventory was generated. The list was reviewed to make sure the seizures made were within the scope of the warrant. A copy of the list was given to Special Agent David Christmore to give to Mrs. Turley. Some items taken from Mrs. Turley's purse were returned to her after the search.

### B. Discussion

Defendant contends that all items seized from his residence during the October 16, 1991, search conducted by agents of the IRS should be suppressed because (1) the search constituted an exploratory general search, and (2) there was not probable cause to support the search warrant.

The Fourth Amendment provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures shall not be violated...." One of the principal evils against which the Fourth Amendment is directed is the government's physical entry of one's home. *See United States v. United States District Court,* 407 U.S. 297, 313, 92 S.Ct. 2125, 2134, 32 L.Ed.2d 752 (1972). It cannot be disputed that a person is entitled to privacy in his or her home. *Steagald v. United States,* 451 U.S. 204, 212, 101 S.Ct. 1642, 1648, 68 L.Ed.2d 38 (1981). Consequently, the court concludes that defendant clearly had a legitimate expectation of privacy in his home entitling them to protection of the Fourth Amendment.

Having determined that defendant possessed a legitimate expectation of privacy in his home, the court must determine whether or not the search and seizure involved in this case was reasonable. The Fourth Amendment does not protect against all searches and seizures, but only against *unreasonable* searches and seizures. *United States v. Sharpe,* 470 U.S. 675, 682, 105 S.Ct. 1568, 1573, 84 L.Ed.2d 605 (1985). In the present case, the search at issue was conducted pursuant to a search warrant. The issue, therefore, is whether any or all of the items seized during the October 16, 1991, search must be suppressed based upon the agents' execution of the warrant.

As a general rule, in searches made pursuant to warrants only the specifically enumerated items may be seized. *United States v. Tamura,* 694 F.2d 591, 595 (9th Cir.1982) (citing *United States v. Honore,* 450 F.2d 31, 33 (9th Cir.1971)). An exception to this rule exists which permits the seizure of contraband or other incriminating evidence found inadvertently during the execution of a warrant. *Id.* at n. 1. Unlawful seizure of items outside the scope of a warrant does not necessarily render the entire search invalid and require the suppression and return of all items seized. *Marvin v. United States,* 732 F.2d 669 (8th Cir.1984) (citations omitted). When items beyond the scope of the search warrant are seized, the usual remedy is to suppress only those specific items which were outside the scope of the warrant. *United States v. Medlin,* 798 F.2d 407, 411 (10th Cir.1986), *app. after remand,* 842 F.2d 1194 (1988). However, "'flagrant disregard for the limitations of a search warrant might make an otherwise valid search an impermissible general search and thus require suppression or return of all evidence seized during the search.'" *Id.* (citing *Marvin,* 732 F.2d at 674–75).

It is the duty of the district court to determine, based upon the evidentiary hearing, whether property was seized illegally, and, if so, whether the improper conduct was so flagrant that exclusion of *all* the seized evidence is warranted. *Id.* In the present case, the only evidence adduced at the evidentiary hearing on this motion from which the court could conclude that anything outside the scope of the search warrant was seized was the seizure of (1) a silver place setting, and (2) ceiling fans and door knobs.

The court concludes that the seizure of the silver set was arguably within the scope of the search warrant. The search warrant described jewelry as items to be seized. Even though the term jewelry does not precisely cover silver place settings, the court concludes that an officer reasonably could have believed the place setting to be covered by the warrant. The seizure of one item not exactly covered by the terms of the search warrant would in no way rise to the level of flagrant disregard for the terms of the warrant which would require suppression of all evidence obtained during the search as defendant suggests.

Additionally, the court concludes that the seizure of the ceiling fans and door knobs which had been reported stolen was appropriate pursuant to the plain view doctrine. *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); *United States v. Marquez,* 687 F.2d 328, 331 (10th Cir.1982). The seizure of items that agents in good faith believe to be evidence or proceeds of criminal activity has previously been upheld by the Tenth Circuit Court of Appeals. *See e.g., United States v. $149,442.43 in U.S. Currency,* 965 F.2d 868, 875 (10th Cir.1992).

550

Defendant has also argued that the government did not establish probable cause to justify the search of his residence. A determination of probable cause by a neutral, detached magistrate must be given great deference and should only be overturned if lacking a "substantial basis." *Illinois v. Gates,* 462 U.S. 213, 236, 103 S.Ct. 2317, 2331, 76 L.Ed.2d 527 (1983). In this case, Chief Judge Earl E. O'Connor found probable cause for the issuance of the warrant. Defendant has failed to demonstrate that the warrant lacked a substantial basis. The court concludes from its independent review of the affidavit attached to the search warrant that the affidavit is sufficient to establish probable cause for the search. Accordingly, the court denies defendant's motion to suppress all evidence obtained during the search.

## II. MOTION TO SUPPRESS STATEMENTS DURING PLEA NEGOTIATIONS

Defendant Turley has also moved to have all evidence as to statements made by the defendant during plea negotiations occurring December 29, 30, and 31, 1991, suppressed. Defendant contends the negotiations touched upon matters now arising in the form of crimes charged in the indictment in the present case. The court held an evidentiary hearing on this motion on July 26, 1993.

### A. Background

During the evidentiary hearing, the court heard testimony from defendant Turley, attorney William Grimshaw, and IRS Special Agent David Christmore. Grimshaw served as defendant Turley's attorney in a civil forfeiture proceeding and was involved in the plea negotiations. The court finds the version of events presented Grimshaw and Christmore to be generally credible. Based upon the credible evidence adduced at the hearing, and as required by Fed.R.Crim.P. 12(e), the court makes the following findings of fact:

1. On the dates in question, defendant Turley, Grimshaw, Assistant United States Attorney Leon Patton, attorney Carl Cornwell and several agents of the FBI and IRS entered into discussions concerning plea negotiations regarding three criminal indictments against Turley, as well as a civil forfeiture case pending against him. Not all parties were involved in the negotiations at all times.

2. During the course of the negotiations, Turley disclosed information regarding insurance checks to Patton. At least one accident which had occurred in Joplin, Missouri was also discussed. Turley explained some abbreviation to Patton pertaining to the Joplin accident. Grimshaw testified that he did not permit Turley to incriminate himself during the discussions. The purpose of the discussions was primarily to negotiate a plea to an income tax charge which was pending against Turley. A settlement of the civil forfeiture case was also discussed.

3. Special Agent Christmore testified that defendant Turley did not disclose anything during the discussions that he did not already know about.

### B. Discussion

Under Fed.R.Crim.P. 11(e)(6) and Fed.R.Civ.P. 410, evidence of any statement made in the course of plea discussions with an attorney for the government are inadmissible in any civil or criminal proceeding against the defendant who was a participant in the plea discussions. In the present case, however, the uncontroverted testimony of Special Agent Christmore has established that no information was gained from the 1991 plea negotiations with defendant Turley which the government did not already have. The government is not precluded from using information it derived from an independent source simply because defendant Turley also discussed the information during plea negotiations.

The court therefore denies defendant Turley's motion to suppress at this time. Defendant Turley may make a contemporaneous objection during trial if the government attempts to use any specific statement made by him during the course of the 1991 plea negotiations against him.

IT IS, THEREFORE, BY THE COURT ORDERED that Defendant George Turley's Motion Suppress (Doc. 120) is denied.

IT IS FURTHER ORDERED that Defendant George Turley's Motion to Suppress (Doc. 121) is denied.

**IT IS SO ORDERED.**